UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TIMOTHY McCORMICK,

                              Plaintiff,

                  -vs-                                                15-CV-46-JTC

CITIBANK, NA,

                              Defendant.

---

      Plaintiff Timothy McCormick brought this action against Best Buy Co., Inc. ("Best Buy"), seeking actual and statutory damages for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, based on allegations that Best Buy used an automated telephone dialing system to repeatedly call plaintiff's cellular telephone, without his prior express consent, regarding his Best Buy credit card account (*see* Dkt. No.1).  Best Buy filed an answer with affirmative defenses, including the defense that plaintiff's TCPA claim is subject to binding arbitration pursuant to the arbitration clause in the written agreement governing the Best Buy credit card account, issued by Citibank, N.A. ("Citibank") (*See* Dkt. No. 12, ¶ 34).  Subsequently, by order entered August 10, 2015 (Dkt. No. 16), the court approved the parties' joint stipulation substituting Citibank as the proper defendant in the case (Dkt. No. 15).

      Citibank has now moved for an order pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, compelling arbitration of plaintiff's claims and staying proceedings in

this court pending completion of arbitration.  *See* Dkt. No. 18.[1]  For the reasons that follow, defendant's motion is granted.

## BACKGROUND

Plaintiff opened his Best Buy account in 2012 when he purchased a television at one of Best Buy's retail stores in Western New York.  *See* Dkt. No. 26 (McCormick Aff.), ¶¶ 3, 4.  He acknowledges that, upon receipt of the Best Buy credit card, he received a copy of the cardholder agreement governing the account, which was originally issued by Capital One Financial Corp. ("Capital One").  Plaintiff made regular payments to Best Buy Credit Services until the balance on the television purchase was paid off.  *Id.* ¶¶ 5 - 7, 10.

As set forth in the Affidavit of Citibank employee Susan Kwiatek, Citibank purchased the Best Buy credit card portfolio from Capital One in February 2013.  *See* Dkt. No. 18-1 (Kwiatek Aff.), ¶ 5.  In October 2013, Citibank sent plaintiff a mailing containing an explanatory letter and "Notice of Change in Terms and Right to Opt Out" advising him that the Best Buy credit card program had been transferred to Citibank, and that among other changes, the card agreement governing his account was being replaced with a new one, a copy of which was enclosed with the mailing.  *See* Dkt. No. 18-2, p. 20.  The letter also advised plaintiff that his Best Buy credit card account number would remain the same; he should keep using the same card; and he should continue to make his payments payable to Best Buy Credit Services.  *Id.* at 19.

---

[1] In the context of motions to compel arbitration brought under the FAA, the court applies a standard similar to that applicable for a motion for summary judgment.  *Bensadoun v. Jobe Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

The arbitration clause in the Card Agreement governing credit card accounts issued by Citibank provides:

**ARBITRATION**

***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION.  ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.  IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY.  ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.***

*Agreement to Arbitrate*:  Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

*Claims Covered*

**What Claims are subject to arbitration?**  All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision.  All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek.  This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims.  A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party.  Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?**  Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir assignee, or trustee in bankruptcy.
* * *

> **Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

Dkt. No. 18-2, pp. 10-11.

Also in October 2013, Citibank sent plaintiff a monthly billing statement which contained the following notice:

> **IMPORTANT INFORMATION REGARDING CHANGES TO YOU BEST BUY© CREDIT CARD ACCOUNT**
>
> –As of September 6, 2013, your Best Buy Credit Card Account is owned by Citibank, N.A.
>
> –Changes to your account terms, including binding arbitration, are explained in a package being mailed to you separately.

*Id.* at 25.

Plaintiff denies receipt of the October 2013 mailing from Citibank containing the letter, Notice of Change in Terms and Right to Opt Out, and Card Agreement. He acknowledges that he used the Best Buy credit card in October 2014 to purchase a cell phone (*see* Dkt. No. 26, ¶ 9), as confirmed by his October 2014 monthly billing statement (*see* Dkt. No. 18-2, pp. 30-33). He alleges in his complaint that, in December 2014 and January 2015, Best Buy violated the TCPA by using an automated dialing system to call him repeatedly on his cell phone without his consent, apparently attempting to collect the unpaid balance on plaintiff's Best Buy credit card account.[2]  *See* Dkt. No. 1, ¶¶ 15-21.

By the present motion, Citibank seeks an order compelling arbitration of plaintiff's TCPA claims in accordance with the arbitration clause of the Card Agreement, and staying

---

[2]According to Citibank, plaintiff's Best Buy account has been charged off for non-payment of balance due as of May 21, 2015.  *See* Dkt. No. 18-1, ¶ 12.

all other proceedings in this action pending the outcome of arbitration.  Plaintiff contends that he should not be compelled to arbitrate his TCPA claims against Citibank because he did not receive a copy of the Citibank Card Agreement, and therefore did not agree or otherwise consent to be bound by the terms of the arbitration clause.  *See* Item 16-2.

## DISCUSSION

**The Federal Arbitration Act.**

Citibank's motion is brought under the FAA, which creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA provides that an arbitration provision in "a contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. Further, the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution" and "supplies not simply a procedural framework applicable in federal courts" but "also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).

The primary purpose of the FAA "is to ensure that private agreements to arbitrate are enforced according to their terms." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989).  The Supreme Court has recognized that, despite the "liberal federal policy favoring arbitration agreements," *Moses H. Cone*, 460 U.S. at 24,

"arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960), *quoted in Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). However, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25. Accordingly, federal policy requires courts "to construe arbitration clauses as broadly as possible …," *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128; *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995), and the agreement to arbitrate should be enforced "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

In the Second Circuit, courts employ the following four-part inquiry to determine whether to order the parties in litigation to arbitrate the claims asserted in the action, and to stay court proceedings pending arbitration:

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) (internal citations omitted); *see also Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998); *Fedotov v. Peter T. Roach & Associates, P.C.*, 2006 WL 692002, at *1 (S.D.N.Y. Mar. 16, 2006).

### 1.     Agreement to Arbitrate

"Because an agreement to arbitrate is a creature of contract, … the ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, the parties ostensibly disagree as to whether determination of this issue is governed by the law of New York (where the contract was entered) or South Dakota (pursuant to the choice of law provision in the Card Agreement). Since there is no conflict between the relevant substantive law of contracts as applied in these states, however, the court need not engage in a choice of law analysis. *See, e.g., Ali v. Fed. Ins. Co.*, 719 F.3d 83, 91 n. 12 (2d Cir. 2013) ("Because there is no conflict between the relevant substantive law …, we dispense with any choice of law analysis."); *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("In the absence of substantive difference, … a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.").

Under New York law, regular use of a credit card constitutes sufficient evidence of the card user's consent to the terms of the agreement governing the account. *Salerno v. Credit One Bank, NA*, 2015 WL 6554977, at *4 (W.D.N.Y. Oct. 29, 2015) (citing cases). The same holds true under South Dakota law. *See, e.g., Fedotov v. Peter T. Roach & Associates, P.C.*, 2006 WL 692002, at *2 (S.D.N.Y. Mar. 16, 2006) (use of credit card after mailing of Card Agreement binds user to arbitration clause; citing S.D. Codified Laws § 54-

11-9 (providing "[t]he use of an accepted credit card ... creates a binding contract between the card holder and the card issuer").

As discussed above, there is uncontested evidence presented on this motion to sufficiently establish that Citibank mailed the Card Agreement, along with the Notice of Change in Terms and Right to Opt Out, to plaintiff in October 2013, and plaintiff used the Best Buy card to purchase a cell phone in October 2014. "In doing so, the plaintiff agreed to the terms of the Arbitration Agreement." *Anonymous v. JP Morgan Chase & Co.*, 2005 WL 2861589, at *4 (S.D.N.Y. Oct. 31, 2005). Additionally, the matters set forth in the sworn affidavit of Susan Kwiatek, and the documents attached thereto, provide compelling circumstantial evidence of Citibank's compliance with its customary policy upon acquisition of a merchant credit card portfolio to provide current account holders with a printed copy of the new agreement governing the account, along with the separate written Notice of Change in Terms and Right to Opt Out, as well as additional notice as provided in the next monthly periodic billing statement. *See* Dkt. No. 18-1, ¶¶ 5-11; Dkt. No. 18-2; *see also Kurz v. Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 463 (S.D.N.Y. 2004) (actual receipt of mailing need not be proven; "[p]roof of mailing may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business.") (quoting *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 917-18 (N.D.Tex. 2000) (crediting testimony of bank's vice president for operations about company's mass mailing process and quality assurance controls).

Based on this record, the court finds that upon using the Best Buy credit card for purchases following Citibank's mailing of the Card Agreement with written notice of change of ownership and terms of the account, plaintiff agreed to be bound by the arbitration

clause of the Card Agreement requiring that all disputes relating to the account be submitted to arbitration governed by, and enforceable under, the FAA. Accordingly, the first element of the four-part arbitrability inquiry is satisfied.

### 2. Scope of the Arbitration Clause

As set forth above, the arbitration clause of Citibank's Card Agreement is extremely broad, encompassing "[a]ll Claims relating to [the] account, a prior related account, or our relationship …, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision." Dkt. No. 18-2, p. 10. The clause applies to all "Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law …," and includes not only claims made by or against Citibank and the account holder, "but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor …." *Id.* at 10, 11. The Agreement also expressly provides that "[a]ny questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the [FAA]." *Id.* at 11.

Considering the breadth of this language, and in light of the strong federal policy requiring courts "to construe arbitration clauses as broadly as possible …," *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128, the court cannot conclude with positive assurance that the arbitration provision of the Citibank Card Agreement "is not susceptible of an interpretation that covers the claims asserted" in the complaint regarding Citibank's

liability under the TCPA for its communications with plaintiff relating to his Best Buy credit card account.  *AT & T Techs., Inc.*, 475 U.S. at 650.  Accordingly, the court finds that the second element of the arbitrability inquiry is satisfied.

### 3. Arbitrability of TCPA Claims

Because plaintiff asserts a federal statutory claim, the court must consider "whether Congress evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."  *Green Tree Fin. Corp.Ala. v. Randolph*, 531 U.S. 79, 90 (2000).  At this step of the inquiry, "the party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue."  *Id.* at 91-92; *see also Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987); *Spinelli v. Nat'l Football League*, 2015 WL 1433370, at *11 (S.D.N.Y. Mar. 27, 2015).

Plaintiff has made no showing in this regard.  Moreover, the few courts that have considered the issue have found nothing in the text or legislative history of the TCPA to suggest that Congress intended TCPA claims to be non-arbitrable.  *See, e.g., Tuttle v. Sallie Mae, Inc.*, 2014 WL 545379, at *7 (N.D. Ind. Feb. 11, 2014) (citing *Cyganiewicz v. Sallie Mae, Inc.*, 2013 WL 5797615, at *5–6 (D.Mass. Oct. 24, 2013)); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207-08 (S.D. Cal. 2013) (citing cases).

Accordingly, the court finds that plaintiff has not met her burden of establishing a congressional intent to preclude waiver of judicial remedies for TCPA claims.

### 4.     Stay Pending Arbitration

Having determined that plaintiff's TCPA claim is within the scope of and subject to the broad arbitration clause of the Card Agreement, and because Citibank has requested a stay, section 3 of the FAA mandates that the court "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3. As recently recognized by the Second Circuit, a mandatory stay "comports with the FAA's statutory scheme and pro-arbitration policy[,] enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award."  *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015).

Accordingly, the court finds that the claims set forth in the complaint in this action are subject to the arbitration clause in the applicable Card Agreement, and the proceedings in this action must therefore be stayed pending the outcome of arbitration.

### **CONCLUSION**

For the foregoing reasons, defendant's motion (Dkt. No. 18) to compel arbitration and stay proceedings in this action is granted.  Pursuant to 9 U.S.C. §§ 3 and 4, the parties are directed to proceed to arbitration in the manner provided for in the Card Agreement, and all proceedings in this action are stayed until such time as the parties have advised the court, by consent motion to lift the stay or by other appropriate joint written submission, that the arbitration has been completed.

So ordered.

                                   \s\ John T. Curtin
                                    JOHN T. CURTIN
                                  United States District Judge

Dated:   January 6, 015
p:\pending\2015\15-46.arb.dec23.2015